UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-11426-RWZ

JOHN CARTER

v.

WARDEN JEFFREY GRONDOLSKY

MEMORANDUM OF DECISION

December 30, 2014

ZOBEL, D.J.

John Carter ("Carter"), a federal prisoner in custody at FMC Devens in Ayer, Massachusetts, has filed a self-prepared petition for a writ of habeas corpus under 28 U.S.C. § 2241. Carter seeks restoration of 27 days of good-conduct time that prison officials revoked as a disciplinary sanction. He also seeks removal of the underlying disciplinary report from his record. Respondent Jeffrey Grondolsky, in his capacity as warden of FMC Devens (the "Warden"), moves to dismiss Carter's petition (Docket # 15), and Carter moves for summary judgment (Docket # 20). For the reasons articulated below, respondent's motion is allowed; petitioner's is denied.

I.  **Background**

Petitioner is serving a 180-month sentence at FMC Devens for two counts of mail fraud and one count of tax evasion.[1]  See Habeas Pet., Docket # 3 ("Pet."), at 3.

---

[1] The facts surrounding Carter's sentence are summarized in United States v. Carter, 319 F. App'x 133 (3d Cir. 2009).

He brought a habeas petition challenging his sentence several years ago. Id. at 2-3. His current habeas petition does not challenge the validity of his confinement, but rather the sanctions he received after an alleged violation of prison rules. Id. at 1.

Carter alleges that on September 10, 2011, a corrections officer uncovered five onions, a tomato, and a 1.5-inch staple remover during a search of his prison cell.[2] Pet. Ex. C. at 4;[3] Mem. in Support of Pet., Docket # 1 ("Habeas Mem."), at 1. Carter has never disputed that the items were in his possession, nor has he disputed that the items were not his.[4] Id.; Opp. to Mot. to Dismiss, Docket # 18 ("Opp. to MTD"), at 5. The corrections officer filed an incident report (the "Incident Report"), citing Carter for stealing (Offense Code 219). Pet. Ex. C, at 4. Carter was then moved to the prison's Special Holding Unit pending an investigation and hearing. Habeas Mem. at 1-2.

On September 11, 2011, a corrections officer delivered a copy of the Incident Report to Carter. Pet. Ex. C at 4; Habeas Mem. at 2. The Warden contends that the officer read the Incident Report to Carter at this time and has submitted documentation to this effect. Declaration of Anthony Amico ("Amico Decl."), Docket # 17, ¶ 6; Amico Decl. Ex. B. at 10. On September 13, 2011, an offense code for possession of stolen

---

[2] As explained below, I will resolve this petition on the Warden's motion to dismiss, which I will treat as a motion for summary judgment. As such, all factual disputes will be resolved in favor of Carter. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). In this section, I have therefore adopted Carter's version of the facts where there are disputes, despite respondent's objections to many of Carter's allegations.

[3] Page numbers for petition exhibits refer to PDF page numbers in Docket # 3-1.

[4] Carter alleges that the staple remover "was given to him by his work supervisor" and, therefore, should not be "considered in the infraction." Opp. to Mot. to Dismiss at 2. At this stage, I will assume that Carter is correct. However, he does not dispute that the food items were in his possession but were not his. Thus, whether the staple remover could have independently led to an infraction is immaterial.

2

property (Code 226) was added to the Incident Report. Pet. Ex. C at 4. The Incident Report, on its face, indicates that an officer gave Carter a copy of the amended version that same day. Id. It is unclear whether the officer read the charges aloud to Carter.

On September 15, 2011, a Unit Discipline Committee ("UDC") reviewed the Incident Report and took Carter's statement. Pet. Ex. C at 4. The UDC then referred the matter for a disciplinary hearing. Id. The next day, Carter appeared for the hearing before Disciplinary Hearing Officer ("DHO") Anthony Amico. Pet. Ex. D at 5. The DHO read Carter his due process rights, which Carter said he understood. Id. at 6. The DHO then read the Incident Report aloud to Carter. Id. Carter waived his right to be represented by a staff member at the hearing, did not present any evidence in his defense, and did not raise any procedural issues at the hearing. Id. at 5-6.

The DHO concluded that Carter committed the possession of stolen property offense (Code 226) based on the Incident Report, photographs of the contraband items, and an adverse inference drawn from Carter's failure to testify or present evidence on his behalf. Id. at 6-7. The DHO expunged the theft offense (Code 219) and imposed a penalty of 7 days disciplinary segregation time, loss of commissary privileges for 90 days, and loss of 27 days of good-conduct time. Id. The DHO's stated rationale for this penalty was:

> The action/behavior on the part of any inmate to possess stolen items
> from an area of the institution creates the potential for conflict between
> individuals, and interferes with the effective operation of the institution
> when government property is stolen. Possessing stolen items cannot and
> will not be tolerated in this environment as it creates more cost for the
> operation of the institution. The sanctions imposed by the DHO were
> taken to let the inmate know that he, and he alone, will be held

3

responsible for his actions/behaviors at all times.

Id. at 7. The DHO then advised Carter of his appeal rights. Id.

Petitioner filed a timely appeal with the Administrative Remedy Coordinator, Northeast Regional Office, alleging that (1) he "was unable to read the two separate incident reports given him in the SHU because he was denied access to his [eyeglasses]," which "constitute[d] a due process violation"; (2) that the "sanctions [were] excessive for 5 onions, a tomato and a 1.5" staple remover" because "[a] decided disparity exist[ed] between Carter's sanctions and those of [an] inmate . . . who was found to have two large plastic (33 gal.) trashbags of food service items in his locker" and received a "<u>choice</u> of [disciplinary segregation] time <u>or</u> loss of good time"; and (3) several procedural "anomalies" were in the incident and hearing reports. Pet. Ex. E at 8-9. On November 3, 2011, the Regional Director denied Carter's appeal. First, the Regional Director rejected Carter's claim that he was not provided his eyeglasses as unsupported by evidence and inconsistent with the record. Id. at 11 ("The record reveals the charges were read to you on three separate occasions and you provided statements in defense of the charges. There is no support for your contention that you were not able to properly prepare because of an alleged lack of access to your eyeglasses."). Second, the Regional Director concluded that "[t]he sanctions imposed . . . were not disproportionate to [Carter's] misconduct," and that loss of good conduct time "would prompt [Carter] to modify [his] behavior and deter others from committing similar acts in the future." Id. Finally, in response to Carter's allegations of "anomalies" in the record, the Regional Director concluded that the

4

"record in this case reflects substantial compliance with Program Statement 5270.09 Inmate Discipline." Id.

On November 15, 2011, Carter timely appealed the Regional Director's decision to the Central Office Administrative Remedy Coordinator. He again pressed his due process claims that he was denied his eyeglasses before the disciplinary hearing and that his sanctions were disproportionately harsher than a similarly situated inmate's, but he did not raise his litany of procedural anomalies. Pet. Ex. F at 12-13. On July 27, 2012, the Central Office denied the appeal on similar grounds to the Regional Director.[5] Amico Decl. Ex. D at 19.

Carter filed a habeas petition under 28 U.S.C. § 2241 with this court on or around August 27, 2012.[6] He asks "that his good-time credits be restored and that the Incident Report be expunged from his record." Pet. at 6. He raises three grounds in support of this relief: (1) a "Due Process violation" because he was "[d]enied eyeglasses when served with Incident report [and] therefore could not read same"; (2) that he "was punished more severely than similarly situated inmate found guilty of same infraction"; and (3) that he "has a liberty interest [in] good-time under Fourteenth Amendment [and] loss of good-time equates to prolonged incarceration." Id. at 4. Interspersed with these grounds, Carter also alleges a "wrongful charge of stealing."

---

[5] In his petition, Carter contends that the Central Office did not respond to his appeal. Pet. at 5. Yet, the Central Office's response appears to be attached as Exhibit D to the Amico Declaration. Carter does not challenge the authenticity of this exhibit, so I will assume that it is complete and correct.

[6] Carter alleges that he filed his petition several months before this court's clerk received it. See Docket # 7. For simplicity, I will assume that the petition was filed on the date that Carter signed it. Pet. at 6. This avoids any procedural bars that might have applied if Carter filed the petition before the Central Office's decision.

Id.

The Warden moved to dismiss the petition on November 2, 2012, contending that all due process requirements were satisfied in this case. Docket # 15. With his motion, the Warden also submitted a sworn declaration and supporting exhibits from the DHO, Mr. Amico. Docket # 17. Carter filed his opposition on November 26, 2012, presenting both legal argument and reviving many of the arguments about procedural anomalies that he raised in his first administrative appeal. Docket # 18. He then filed a motion for summary judgment on March 13, 2014. Docket # 20. That motion, which was not accompanied by a statement of material facts or any supporting evidence, largely restates the arguments presented in his petition and opposition to the Warden's motion to dismiss.

**II.     Jurisdiction**

Persons "in custody in violation of the Constitution or laws or treaties of the United States" may challenge their detention by seeking a writ of habeas corpus. 28 U.S.C. § 2241(c)(3). A federal prisoner challenging the manner, execution, or conditions of a sentence may bring a petition under 28 U.S.C. § 2241. Muniz v. Sabol, 517 F.3d 29, 33-34 (1st Cir. 2008). "A challenge . . . to a disciplinary action that resulted in the loss of good-time credits[] is properly brought pursuant to § 2241, as the action could affect the duration of the petitioner's sentence." See, e.g., Queen v. Miner, 530 F.3d 253, 254 n.2 (3d Cir. 2008). A petition under § 2241 must be brought in the district where the prisoner is incarcerated, United States v. Barrett, 178 F.3d 34, 50 n.10 (1st Cir. 1999), and must follow exhaustion of all available federal

6

administrative remedies.  See Sayyah v. Farquharson, 382 F.3d 20, 24 (1st Cir. 2004).

There is no dispute that Carter was serving a federal sentence at a federal prison when the alleged violations of his rights occurred and when this petition was filed.  Although he raises several grounds for relief in his petition, all challenge the sanctions imposed after a prison disciplinary hearing.  Because these sanctions affect the manner, execution, and conditions of Carter's sentence, a petition under § 2241 is the appropriate vehicle through which to challenge it.  There is no dispute that Carter exhausted his administrative remedies before bringing this petition, or that this is the proper district in which to bring the petition.  I therefore have jurisdiction.

### III.	Standard of Review

Although the Warden has styled his motion as one to dismiss, his arguments about the merits of Carter's claims and his inclusion of factual evidence beyond the petition itself (i.e., the Amico Declaration) suggest that it is better treated as one for summary judgment.  Cf. Raimondoray v. Grondolsky, No. 11-cv-12268, 2012 WL 3202892, at *1 (D. Mass. Aug. 2, 2012) (converting warden's motion to dismiss § 2241 petition to motion for summary judgment).  Summary judgment will be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The movant bears the initial burden of explaining the basis for its motion and pointing out the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To defeat summary judgment, the nonmovant must then advance evidence showing that material facts remain in dispute.  In particular, the nonmoving party must produce admissible evidence

supporting the existence of all the essential elements on which it will bear the burden of proof at trial.  Id. at 322-23.  The court must view the record in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  If the evidence presented would allow a reasonable jury to return a verdict for the nonmovant, summary judgment must be denied.  Id. at 248.  Although Carter's papers are read liberally, given his pro se status, they must still meet the evidentiary standard set forth in Rule 56.  See Mas Marques v. Digital Equip. Corp., 637 F.2d 24, 27 (1st Cir. 1980).

## IV. Analysis

The Fifth Amendment's Due Process Clause requires that "[n]o person . . . be deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  Federal inmates possess a liberty interest in good-conduct time, so proceedings affecting it are subject to due process requirements.  See Wolff v. McDonnell, 418 U.S. 539, 555-57 (1974).  Where a prison disciplinary hearing results in the loss of good-conduct time, due process requires at least 24 hours notice of the disciplinary charges, in writing; a written statement by the fact-finder detailing the evidence relied on and reasons for the disciplinary action; and a hearing with the right to testify, call witnesses, and present documentary evidence, when not unduly hazardous to correctional goals.  Id. at 564-66.

Broadly viewed, Carter's arguments fall into two categories: due process violations at the hearing stage, and due process and related violations about the nature of the sanction.  I address each in turn.  Carter does not challenge the DHO's finding

8

that he committed the underlying offense. Accordingly, I need not determine whether the officer's finding was supported by sufficient evidence. See, e.g., Superintendent, Mass. Correctional Inst., Walpole v. Hill, 472 U.S. 445, 454 (1985).

### A. Hearing

Carter challenges both the adequacy of the notice and the sufficiency of the written statement he received before the hearing. On notice, he does not contest that he received timely written notice of the disciplinary charges in the form of an incident report. Rather, he challenges the notice's adequacy because he was allegedly "[d]enied eyeglasses when served with [the] Incident report therefore could not read same." Pet. at 4. According to Carter, this meant that he "could not respond in writing to [the] charges . . . [or] utilize the on-line law reference computer present in [the] disciplinary segregation [unit]." Opp. to MTD at 3. The Warden counters that Carter was read the full incident report both on September 11, 2011, and at the hearing on September 16, 2011. Amico Decl. ¶¶ 6, 8; Amico Decl. Ex. B at 10 (read incident report on Sept. 11, 2011); Pet. Ex. D at 6 (read incident report at hearing). Carter does not contest this. The Warden further contends that Carter never asked for his eyeglasses. See, e.g., Amico Decl. ¶¶ 7-8. Carter vehemently contests this assertion. See, e.g., Opp. to MTD at 3.

To satisfy the notice requirement, the prison officials needed only provide Carter with "advance written notice of the claimed violation and a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken." Wolff, 418 U.S. at 563. The purpose of the notice requirement is "to inform [the

9

accused inmate] of the charges and to enable him to marshal the facts and prepare a defense." Id. at 564. Carter admits that he received the written notice, and he does not contest that a corrections officer read the full incident report aloud to him several days before the hearing.[7] This was sufficient to make him aware of the charges so he could begin preparing his case.

Carter's claim that he was denied his eyeglasses is without merit. There is no indication in the disciplinary record that he ever requested his eyeglasses, and the DHO has submitted a sworn statement denying that he did. All Carter has offered in response is his own unsworn statements—he has not offered, for example, evidence or affidavits from other parties who may have heard his alleged requests. By offering no evidence on this point—a point that forms the basis of his due process claims—Carter fails to satisfy the Rule 56 standard.

Petitioner's suggestion that the change of offense code from stealing (Code 219) to possession of stolen property (Code 226) violated his due process rights also fails. Carter does not allege that the Incident Report did not explain the facts underlying the charge of which he was eventually found guilty; he only claims that the original report should have listed the final charge. Carter fails to show how the later inclusion of a second charge arising from the same facts that were detailed in the Incident Report affected his ability or his due process right to present a proper defense at the disciplinary hearing. Carter's acts were the basis of the charges, and it is clear that he

---

[7] Despite alluding to the readings as "oral presentation of partial or evolving facts," Opp. to Mot. to Dismiss at 8, Carter offers no evidence or even direct allegations to suggest that the incident reports were not read accurately and in their entirety.

10

received adequate notice of the alleged facts that gave rise to the proceedings. Cf. Northern v. Hanks, 326 F.3d 909, 910 (7th Cir. 2003) (rejecting the petitioner's argument that "the reviewing authority's modification of the charge [from a code 100 to a code 111/113-A] violated due process because it did not give him advance notice, [such that] he could not mount an appropriate defense"); Davis v. O'Brien, No. 7:08-cv-00200, 2008 WL 631172, at *3 (W.D. Va. Mar. 7, 2008) (rejecting petitioner's argument that his due process rights were violated when he was found guilty of an offense code different from the offense code originally cited in the incident report).[8]

**B.    Sanctions**

Petitioner next contends that the sanctions imposed by the hearing officer—specifically, the loss of good-conduct time—violates his due process rights. He contends both that the sanctions were disproportionate to the underlying offense and that they were arbitrary in light of a similarly situated inmate's sanctions. Neither of these arguments has merit.

First, although severe, the sanctions imposed on Carter were not so disproportionate to the underlying offense that they contravened his rights. The Eighth

---

[8] Carter contends, for the first time in his opposition to the Warden's motion to dismiss, that the DHO was not impartial because of his long employment at FMC Devens and that the officer may not have had proper credentials to conduct hearings. Opp. to MTD at 7. These arguments fail. The mere fact that a hearing officer is employed at the prison does not create a conflict of interest that contravenes Carter's due process rights. Wolff, 418 U.S. at 571 (concluding that hearing committee comprised of associate warden, correctional industries superintendent, and reception center director did not "present[] such a hazard of arbitrary decisionmaking that it should be held violative of due process of law"). Moreover, Carter's speculative claims about the DHO's training, unsupported by any evidence, do not satisfy the heightened pleading standard necessary to support a habeas petition. See Rule 2, Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254; id. Rule 1 (applying Rules Governing § 2254 Cases to habeas petitions under § 2241).

11

Amendment[9] is violated only when a punishment is grossly disproportionate to the severity of the offense. See Rummel v. Estelle, 445 U.S. 263, 271-74 (1980). Inmate disciplinary procedures are codified in the federal regulations, which categorize offenses according to their severity. See 28 C.F.R. § 541 et seq. Carter was charged with possession of stolen property, Code 226, which is categorized as a "High Severity Level" offense. See 28 C.F.R. § 541.3. Under the regulations, allowable sanctions include, but are not limited to, disallowance of between 25% of 50% (14-27 days) of good-conduct time credit; loss of privileges, like commissary; and disciplinary segregation for up to 6 months. Id. Carter's sanctions—loss of 27 days of good-conduct time credit, loss of commissary privileges for 90 days, and 7 days of disciplinary segregation—were within the allowable limits. Thus, the sanctions were not excessive. See, e.g., Atkinson v. Willingham, No. 3:05-cv-673, 2007 WL 685168, at *5 & n.6 (D. Conn. Mar. 3, 2007) (noting that sanctions imposed within the limits prescribed by regulation were reasonable).

To the extent that petitioner challenges the classification of his offense as High Severity Level, his argument is without merit. Although loss of 50% of his annual good-conduct time, together with 90 days of commissary privileges and 7 days of disciplinary segregation, is high, it is not disproportionate to conduct that the DHO described as "creat[ing] the potential for conflict between individuals, and interfer[ing] with the effective operation of the institution." Pet. Ex. D at 7; cf. Booker v. Quintana,

---

[9] Carter does not expressly assert an Eighth Amendment claim. I must construe pro se filings liberally, however, so I consider Carter's disproportionality claim within the Eighth Amendment framework.

No. 5:14-cv-179, 2014 WL 5106895, at *5 (E.D. Ky. Oct. 6, 2014) (dismissing § 2241 petition alleging that sanctions consisting of 15 days of disciplinary segregation, 180 days of lost commissary privileges, and 27 days of forfeited good-conduct time were excessive for theft (Code 219), another High Severity Level offense, where the items stolen were six oranges).[10]

Second, petitioner asserts that his penalty was more severe than other inmates who committed a similar offense—at least one of whom was dealt with informally, and another of whom received a formal sanction that did not include loss of good-conduct time.[11] Pet. at 4; Opp. to MTD at 2. The First Circuit has recognized that there exists a "broad exercise of discretion by prison authorities to take reasonable and necessary action, including punishment, to enforce the prison disciplinary regime." Collazo-Leon v. United States Bureau of Prisons, 51 F.3d 315, 318 (1st Cir. 1995). "Under such circumstances, disciplinary matters are private and addressed on a case-by-case basis, as a result of which circumstances surrounding one inmate's discipline cannot be compared to the discipline imposed on another inmate since each case stands on its own merits." Rosa v. Grondolsky, No. CIV.A. 13-10496-JGD, 2013 WL 3491077, at *9

---

[10] Carter raises several arguments relating to the mandatory loss of good-conduct time for certain prisoners who commit a High Severity Level offense under 28 C.F.R. § 541.4. Because I do not base my decision on the mandatory nature of the sanction, I do not reach those arguments.

[11] Carter suggests that these inmates should have been punished more severely, not that he should have been punished less severely. See, e.g., Opp. to MTD at 6 ("Respondent goes on to explain that because the comparator was sentenced under the Sentencing Reform Act (SRA) as opposed to the Prison Litigation Reform Act (PLRA), under which petitioner was sentenced, there cannot be a mandatory loss of GCT credits. This statement does nothing to alleviate the fact that other sanctions exist within the program guidelines to effect parity."). Because Carter is entitled to no relief to the extent that he seeks greater sanctions for other inmates, I will construe his argument as seeking lesser sanctions for himself.

(D. Mass. July 9, 2013) (internal quotation marks omitted). Here, Carter's sanction fell within acceptable parameters, and prison officials considered his personal circumstances in determining the appropriate sanction. See, e.g., Pet. Ex. C at 7 (explaining reason for sanctions, including deterrence); Amico Decl. Ex. B at 10 (noting Carter's demeanor during interview and discussing his disciplinary record). In light of "the need to accord prison officials considerable latitude in matters of internal discipline," this court "cannot say that the sanctions imposed, in light of the seriousness of the violations, were so extreme as to be unreasonable by the constitutional standard." Collazo-Leon, 51 F.3d at 318-19.

**V. Conclusion**

Based on the foregoing, respondent's motion to dismiss the petition for a writ of habeas corpus (Docket # 15) is ALLOWED, and petitioner's motion for summary judgment (Docket # 20) is DENIED.

Judgment may be entered dismissing the petition.

|  December 30, 2014  | /s/Rya W. Zobel |
|---|---|
| DATE | RYA W. ZOBEL<br>UNITED STATES DISTRICT JUDGE |